PearsoN, O. J.
Before entering upon the exceptions, two general remarks will serve to give “ color and complexion” to this whole case. “ Defendant admits that he was the active partner, kept the books, made all the entries, and received and disbursed the funds, hired hands and paid them, and did all the other business of the firm.”
It follows that if the proper entries arc not made, so as to show, on the books, the condition of the business, it was the fault of the defendant, and he will not be allowed to take advantage of his own wrong. The defendant makes a charge against the firm, amounting to more than four thousand dollars j it is not supported by any entry on the books, and instead thereof, the defendant relies “on four notes” purporting to have been executed by the firm to himself, with different dates, and for the several sums, amounting in all, to the sum total claimed, and professes in his answer to give the transactions constituting the consideration. These notes are in his hand-writing, and the name of the firm signed by him. There is no proof that they were ever exhibited to the deceased partner, or were ever seen by any one in his life-time. — ■ These circumstances detract much from the credit which might, otherwise, be due to the answer, and reflect unfavorably upon the testimony of the defendant’s father, which is relied on in support of several of his charges.
1. The first exception is overruled because of its generality. The objeet of an exception is to call the attention of the court to some specific matter or item in the account, in respect to which error is alledged. If an exception does not answer this purpose, the court will not notice it.
2. The second exception is overruled. Neither IV. H. Haynes, nor any other witness, proves that ho charge was to bo made for the hire of Jess, and the allegation of the answer is not only unsupported, but is opposed by the weight of the evidence. The tan-yard tools and fixtures, shoe-shop, house and lot, which it is admitted the partner, Brown, was to furnish free of rent, in compensation for the services of the defendant, was worth an annual rent of some five hundred dollars. Two *55 hundred and fifty dollars was a fair allowance for the services of the defendant, who was a young man, and had no experience in the business, and was to be also allowed one half the profits.
3. The third exception is overruled. The witness, W. EL Iiaynes, who is the father of the defendant, deposes that Brown, whose daughter his son had recently married, told him that he was to furnish every thing, and that the defendant was to attend to the business, and “ was to be at no expense.” The proper construction of this is, that Brown was to furnish the tan-yard, shoe-shop, houses, tools and stock on hand, that is, every thing connected with the business. It would be a strained construction to make the words include provisions for the use of the defendant and his family, and also their clothes and furniture, and other necessaries for housekeeping !! Had this been the understanding, the books would have contained many entries in respect to such articles, whereas, there is no entry of the kind, and the defendant does not, in his answer, alledge that the “ victuals and clothes” of himself and wife, were to be furnished by Brown. He says that Brown was to furnish, without charge, the tan-yard, tools, &c., his mules to grind the bark, and old Jesse, the tanner, and the shoe-shop, dwelling house and lots, “ these were all to be furnished without charge.” So, the probata, (construed as contended for,) goes beyond the allegata !
4. The fourth exception is overruled. This applies to the four noles, amounting to $4344.46, which are referred to above. The idea that a partner, without the express concurrence of his copartner, can make a note of the firm payable to himself, and charge the firm with it, is too monstrous to be entertained for a moment! The only motive that can prompt one to manufacture secret evidence of this kind, must be that he prefers to keep the evidence in his pocket, rather than put it on the books, where it would be subject to the inspection of his copartner. In our case, the proof is, that the defendant did not have the means to enable him to advance such *56 large sums for the use of the firm ; indeed, it would seem that he was barely able to support himself and his wife.
5. The fifth exception is overruled. The answer seeks to «charge the firm with a note for $525, dated August the 8th, 1858, and sets forth “ this note was given for a negro boy, Burton, the property of the firm, taken by the intestate.”— This is one of the four notes embraced in the fourth exception, and the defendant failing in his attempt to have the note allowed, seeks to set up a charge against the firm for the value of the slave,, on the ground, that the slave was purchased and paid for by' the firm, and afterwards appropriated by the intestate to his individual use. If such was the case, the intestate ought to have been required, when he took the slave, to give his note to the firm, or been charged with the amount on the books, and it was’a strange notion, on the part of the defendant, that he could make it the foundation of a note by the firm to himself for the váílue of the slave. This circumstance, together with the absence of any entry on the books, in respect to it, puts suspicion on the transaction. It is proved that the slave went into the possession of Brown, and was claimed by him as his individual property. For the purpose of showing that he was bought and paid for by the firm, the defendant relies on the testimony of his father, who says “ I sold the firm a boy, Burton ; he was paid for out of the firm funds; afterwards, Mr. Brown took the boy to his plantation, and told me he was to account for him to the firm. I don’t recollect what I got for Burton, I sold them another negro at the same time; I think it was between $700 and $800 that I got for both boys.” No explanation is given how this witness happened to know the fact, that the price of this boy was “paid for out of the firm funds.” Witness says, “I don’t recollect when I sold him, nor do I recollect where Thos. Haynes lived at the time.” It may be his son told him so ; it was in character with the fact that he should, thereupon, make a note payable to himself, for the full value of the boy, •and put the name of the firm to it. But, however this may be, as it was the business of the defendant to keep the books, *57 and to have charged Brown with the value of the boy, if, in truth, he had been the property of the firm; in the absence of any entry on the books, we cannot, upon loose testimony, like this, declare that the defendant has supported the charge; and strongly incline to the opinion, that, as it was not a part of the business of the firm to trade in negroes, as no bill of sale is produced by the defendant, who ought to have taken one, and no entry was made on the books in respect to it, connected with the fact that the defendant manufactured the note above referred to, that the defendant bought the boy as the agent of Brown, and not as a member of the firm¡ at all events, there is no sufficient proof that the slave was paid for out of the funds of the firm.
6. The sixtli exception is overruled. The answer seeks to charge the firm with a note of $960.79, dated the 15th of February, 1855, and sets forth, “ This was given on the settlement of Henry "W. Brown and Michael S. Brown’s estates, one half of this sum belonged to this defendant, and the other half to M. L. Brown.” This is also one of the four notes embraced in the fourth exception, and the defendant failing in his attempt to have the note allowed, seeks to set up a charge against the firm, for the amount, on the ground that the firm had received the commissions due on settlement of the estates of Henry and Michael Brown. If such was the fact, the books of the firm ought to show it, but there is no entry on the books, and no proof of the allegation, and the firm does not seem to have been in any way connected with these two estates, except by the strange notion of the defendant that he could make it the foundation of a note by the firm to himself, as he did in respect to the slave, Burton.
7. The seventh exception is overruled. It appears by the proofs that the defendant had been acting as a clerk in a store for a year or two before he married, and entered into business with his father-in-law; he had no funds when he left the store, and was actually in debt to his employer some seventy dollars. So, he was not able to make advances for the firm, and does not alledge, in his answer, that he did so. The evidence of *58 his father, on which this exception is based, is another instance where the probata readies beyond the allegata. W. IT. Haynes deposes, “ I let him, (my son,) have money at different times; the largest amount I recollect of letting him have at any one time, was-$400.” In answer to a question, on cross-examination, “Did you make a gift of the money to your son which yon say you let him have, if not, did yon lend it to your son or to the firm, and was it ever paid back to you ”? The witness says, “Not the whole of it; $400 was borrowed by the firm to purchase hides with, and one half of it has been paid back by the firm, the balance of the money was a gift.” This ■witness lived some twenty miles distant, in another county, and had no opportunity of knowing the business of the firm, except what -was communicated to him by his son. So, the most charitable construction of his testimony is, that his son told him that the money was borrowed by the firm. The, books furnish no evidence of the fact that this $400 went to the use of the firm, and, in the absence of that proof, this evidence is not sufficient to support the charge against the firm.
8. The eighth exception is overruled. This is another item embraced by one of those “four unfortunate notes.” It is enough to say that the note of Rymer and others, for $600, is on its face, payable to M. L. Brown, individually, and there is no evidence that it ever did become the property of the firm.
In passing on all of the exceptions, we have been governed by a well established rule in the law applicable to copartners, i. e. where a partner, whose duty it is to keep the books, seeks to make a charge in his own favor, which is not supported by a proper entry on the books, he must account for that fact, and can only support the charge by clear proof; for every presumption is made against him, inasmuch as between partners, their books have the verity of a record. If the defendant, by the application of this rule, has lost any one claim, which is a just one, it is his misfortune, and the result of his own neglect in not making the proper entry. The matter was not helped by his attempt to manufacture evidence in order to *59 supply the omission, and he was certainly ill advised in urging charges upon insufficient proof.
There will be a reference, in order to show the balance after bringing into the account the sum of $2021.49, which was omitted, and the report will be in all things confirmed.
Pee CueiaM, Decree accordingly.